UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSHUA LEE REDDING,

                Plaintiff,

v.

JORDAN BALETO, *et al.*,

                Defendants.

Case No. C23-5430-MJP-SKV

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This is a prisoner civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Joshua Redding filed this action while in the custody of the Washington Department of Corrections. Plaintiff is no longer confined. The claims asserted in this action relate to events that occurred in 2022 while Plaintiff was confined at the Washington Corrections Center ("WCC") in Shelton, Washington. *See* Dkt. 17. Specifically, Plaintiff alleges that Defendants violated his Eighth Amendment rights when they used excessive force against him, failed to protect him from harm, and denied him access to a shower and to recreation. *Id*. Plaintiff identifies as Defendants in his

REPORT AND RECOMMENDATION
PAGE - 1

1  complaint WCC Correctional Officers Jordan Baleto, Benjamin Krafcik, Richard Ricker, and

2  Richard Ferebee.[1]  *Id*. at 3-4.  Plaintiff seeks damages in excess of $2 million.  *Id*. at 15.

3        Defendants have filed a motion for summary judgment which is currently ripe for review.

4  Dkt. 39.  Plaintiff submitted a response to Defendants' motion in which he reiterated the

5  allegations in his complaint and briefly addressed Defendants' arguments.  Dkt. 51.  Plaintiff

6  also indicated, however, that he did not receive proper notice of Defendants motion, nor was he

7  afforded adequate time to respond.  Dkt. 51.  Plaintiff was granted an extension of time to file an

8  additional response to the motion (Dkt. 55), though no such response was ever filed.[2]

9        The Court, having reviewed Plaintiff's amended complaint, Defendants' motion for

10  summary judgment, and the balance of the record, concludes that Defendants' motion for

11  summary judgment should be granted, and that Plaintiff's amended complaint and this action

12  should be dismissed with prejudice.

13                        **II.      BACKGROUND**

14      **A.      Facts**

15        Plaintiff was confined at WCC from October 24, 2022 to January 9, 2023, pursuant to a

16  conviction for felony failure to register as a sex offender.  Dkt. 46, ¶ 3.  On October 26, 2022,

17  Defendants Krafcik and Baleto were working together in Receiving Unit 5 ("R-5") at WCC

18  where Plaintiff was then housed.  Dkt. 40, ¶ 3; Dkt. 42, ¶ 3.  On that date, a group of inmates,

19  including Plaintiff, had been let out of their cells for recreation time but when the recreation

---

[1] Plaintiff also named a "John Doe" Defendant in his amended complaint who was identified therein only as a WCC Correctional Supervisor for housing unit R-5.  *See* Dkt. 17 at 4.  That individual has never been fully identified, has therefore never been served and, thus, is not deemed a proper defendant in this action.

[2] The Court observes that Plaintiff has been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).  *See* Dkt. 45, Ex. A.

REPORT AND RECOMMENDATION
PAGE - 2

period ended and the group was directed to return to their cells, Plaintiff refused. *See id*. According to Defendant Krafcik, Plaintiff was ranting about there being demons in his cell and his cellmate being possessed. Dkt. 42, ¶ 3.

Because Plaintiff continued to ignore Defendants' directives to return to his cell, and was displaying unpredictable and concerning behavior, Plaintiff was placed in handcuffs by Defendants Baleto and Krafcik, searched for contraband, and escorted to the R-5 holding cell. Dkt. 40, ¶ 3; Dkt. 42, ¶ 4. During the escort, Plaintiff tensed up and tried to pull away from Defendants, but Defendants managed to successfully escort him to the holding cell without incident. *See* Dkt. 42, ¶ 4; Dkt. 46, Exs. A, B. Once in the holding cell, Plaintiff made loud noises, rambled incoherently, and manipulated the handcuffs from behind his body to the front of his body. *See* Dkt. 40, ¶ 4; Dkt. 42, ¶ 5; Dkt. 46, Exs. A, B, C. He also continued to rant about demons in his cell and his cellmate being possessed by the devil. Dkt. 42, ¶ 5.

Defendant Ferebee was performing duties as the R-5 Unit Sergeant on the morning of October 26, 2022, when he heard officers issuing directives to an inmate and placing the inmate into a holding cell. *See* Dkt. 41, ¶ 3; Dkt. 46, Ex. C. The officers explained to Defendant Ferebee that Plaintiff had refused to leave the dayroom and return to his cell when directed to do so. *See id*. Defendant Ferebee thereafter went to check on Plaintiff in the holding cell and was told by Plaintiff that he was in sovereign territory and rules did not apply to him. Dkt. 41, ¶ 4. Plaintiff also told Defendant Ferebee that he needed an exorcist and some sage. *Id*.

According to Defendant Ferebee, Plaintiff would seem normal for a minute and would then say things that were "borderline threats and violent." Dkt. 41, ¶ 4. Defendant Ferebee notes, by way of example, that Plaintiff made a generalized threat to those in the immediate vicinity that they had better watch out when he got out of prison. *Id*. When Defendant Ferebee

attempted to ask Plaintiff questions so he could understand what was going on, Plaintiff's responses were incoherent and rambling. *Id.*, ¶ 5; Dkt. 46, Ex. C. Suspecting that Plaintiff was experiencing mental health issues, Defendant Ferebee contacted mental health staff and completed a "Request for Mental Health Assessment" form. *Id.*

Psychology Associate Nataly Carriker arrived to do an assessment of Plaintiff's mental health status. Dkt. 41, ¶ 5, Dkt. 44, ¶ 3, Ex. A. According to Ms. Carriker, at that time Plaintiff was exhibiting odd and disorganized behavior, rambling speech, excess energy, and delusions, possibly related to substance use. Dkt. 44, ¶ 3, Ex. A. During the assessment, Plaintiff told Ms. Carriker he would not go back to his cell "with my brother and demon," and he became nervous and avoidant when asked about his substance use. *Id*. Ms. Carriker recommended Defendant Ferebee arrange for a urinalysis drug test. Dkt. 41, ¶ 6; Dkt. 46, Ex. C.

Defendant Ricker, a Urine Analysis ("UA") Correctional Officer at WCC, was asked to conduct a UA test on Plaintiff. Dkt. 43, ¶ 3. When Defendant Ricker first observed Plaintiff in the R-5 holding cell, Plaintiff was ranting incoherently and his pupils were abnormally dilated. *Id*. Defendant Ricker suspected Plaintiff was under the influence of drugs. *Id*. This conclusion was at least partially informed by the fact that leading up to his encounter with Plaintiff on October 26, 2022, Defendant Ricker had responded to multiple incidents of similarly erratic behavior involving inmates housed in the same area as Plaintiff, several of whom tested positive for methamphetamine. *Id*.

After initially refusing to sign the UA test acknowledgement form, Plaintiff changed his mind and agreed to provide a urine sample. *See* Dkt. 41, ¶ 7; Dkt. 43, ¶ 4; Dkt. 46, Exs. A, B. It was decided Plaintiff would be escorted to an open bathroom/shower area to obtain the sample. Dkt. 43, ¶ 4; Dkt. 46, Ex. C. Defendants Baleto and Krafcik escorted Plaintiff from the holding

REPORT AND RECOMMENDATION
PAGE - 4

cell to the bathroom/shower area with "hands on" Plaintiff, and Defendants Ferebee and Ricker followed behind. Dkt. 40, ¶ 4; Dkt. 41, ¶ 9; Dkt. 42, ¶ 6; Dkt. 43, ¶ 4; Dkt. 46, Ex. C. While on their way to the bathroom/shower area, Plaintiff repeatedly tensed up and physically resisted the escort. *See id*.

When they entered the bathroom/shower area, Plaintiff stopped walking and refused to proceed further, ignoring directives to keep walking. *See* Dkt. 40, ¶ 4; Dkt. 41, ¶ 10; Dkt. 42, ¶ 7; Dkt. 43, ¶ 5; Dkt. 46, Exs. A, B. C. Plaintiff then turned and lunged backwards towards Defendant Baleto. Dkt. 40, ¶ 4; Dkt. 42, ¶ 7; Dkt. 46, Exs. A, B. Defendant Baleto used Plaintiff's momentum to pull him to the ground as he placed downward pressure on Plaintiff's left side while Defendant Krafcik placed downward pressure on Plaintiff's right side. *See* Dkt. 40, ¶ 4; Dkt. 46, Exs. A, B. Once on the ground, Plaintiff continued to struggle against officers while ranting and yelling and ignoring officers' directives to comply. Dkt. 41, ¶ 11; Dkt. 43, ¶ 5; Dkt. 46, Ex. C. As Plaintiff thrashed around, his head was swinging and banging on the ground, and Defendant Baleto responded by placing his hand on the top of Plaintiff's head to prevent further head movement. *See* Dkt. 40, ¶ 4; Dkt. 41, ¶ 11; Dkt. 43, ¶ 5; Dkt. 46, Ex. A. Defendant Baleto injured his own hand while attempting to control Plaintiff. Dkt. 40, ¶ 4; Dkt. 46, Ex. C.

While Defendant Baleto attempted to control Plaintiff's upper body, Defendant Krafcik secured Plaintiff's legs by placing one ankle inside of the other knee and folding the ankle towards the knee (a "figure 4 position"), applying downward pressure to keep the legs secure. Dkt. 42, ¶ 8; Dkt. 46, Ex. B; *see also*, Dkt. 43, ¶ 6. Once officers regained control of Plaintiff, Defendant Ferebee used a handheld video camera to document Plaintiff's condition at that time. Dkt. 41, ¶ 12. The brief video shows Plaintiff lying face down on the floor, with Defendant Baleto's hand on his head. *See* Dkt. 46, Ex. E. There appears to be some blood in the area near

REPORT AND RECOMMENDATION
PAGE - 5

Plaintiff's head, and it sounds as though he is continuing to speak incoherently. *Id*. Plaintiff otherwise appears to be calm as do the officers. *See id*.

Additional officers responded to the area and Plaintiff was placed in a WRAP restraint cart. *See* Dkt. 40, ¶ 4; Dkt. 41, ¶ 13; Dkt. 42, ¶ 8; Dkt. 43, ¶ 6; Dkt. 46, Exs. A, B, C. Plaintiff was then transported to the intensive management unit ("IMU") and assessed by the medical staff for any injury and for suitability for IMU placement. Dkt. 46, Ex. C. The mental health staff was also contacted again and determined the close observation unit ("COA") of the infirmary area was a more appropriate place to house Plaintiff. Dkt. 44, ¶ 3; Dkt. 46, Exs. C, K. Plaintiff was then transported from the IMU to the COA where he was again medically assessed and a small laceration on his eyebrow was treated by cleaning the wound and applying two steri-strips to close it. *See id*. Once in the COA, Plaintiff agreed to participate in a UA, and the results were positive for methamphetamine and MDMA. Dkt. 44, ¶ 3, Ex. A.

The following day, October 27, 2022, Plaintiff was seen in the COA for a "check-in" with psychiatry. Dkt. 44, Ex. B. Ms. Carriker prepared a Close Observation Mental Status Examination report on that date which reflects her observations of Plaintiff lying on the ground and claiming to be paralyzed because his legs and ribs were broken, and then standing up from the ground and walking around the cell, despite his reports of being unable to walk and needing a wheelchair. *Id*. Ms. Carriker's report also reflects Plaintiff's admission to her that he was under the influence of a controlled substance the preceding day, as well as Plaintiff's report to her that he was going to hurt other people. *See id*., ¶ 4, Ex. B.

On October 28, 2022, and again on October 31, 2022, Plaintiff submitted health services kites in which he complained that he had been attacked by "COs" who had broken his ribs in

REPORT AND RECOMMENDATION
PAGE - 6

multiple places and re-injured his pelvis.[3]  *See* Dkt. 6, Exs. G, H.  Plaintiff requested that x-rays be taken of his ribs, that he be provided pain medication, and that he be given extra portions of food, especially protein, to help heal his broken bones.  *See id*.  Plaintiff was seen by a medical provider on November 2, 2022, and his ribs were examined.  *See* Dkt. 46, Ex. G.  The medical provider indicated there was no objective data to support Plaintiff's claim that *all* of his ribs were broken, but the provider nonetheless completed a diagnostic imaging request for x-rays of Plaintiff's ribs in order to rule out a fracture in all of the ribs.  *See id*.  Plaintiff's ribs were x-rayed on November 9, 2022, and some fractures were apparently identified.  *See id*.; Dkt. 6, Ex. J.  Plaintiff was prescribed pain medication and advised it would take time for the fractures to heal.  Dkt. 6, Ex. J.

**B.** **Plaintiff's Claims**

Plaintiff alleges in his amended complaint that Defendants Baleto and Krafcik violated his Eighth Amendment rights when they used excessive force against him on October 26, 2022, while escorting him to the bathroom to conduct a UA.  *See* Dkt. 17 at 5-6, 8-9.  Plaintiff claims that he was violently taken down for no reason and was "viciously attacked."  *See id*.  Plaintiff maintains that he never resisted officers and was not struggling.  *See id*.  Plaintiff asserts that the force used by the officers was "completely unnecessary and excessive" and resulted in an

---

[3] Approximately a month before the incident at WCC, on September 23, 2022, Plaintiff went to the Swedish Edmonds Emergency Center where he reported that approximately two weeks prior, he had been hit by a car while riding his bike and he complained of pelvic pain and pain related to a "small crack to the right finger."  Dkt. 46, Ex. I.  A CT scan of Plaintiff's abdomen and pelvis showed multiple pelvic fractures and an L2 transverse process fracture.  *Id*.  Plaintiff was directed to follow-up with orthopedic surgery but never did no.  *Id*., Exs. I and J.  Plaintiff returned to the same emergency department on October 13, 2022, complaining again of pelvic pain.  *Id*., Ex. J.  Plaintiff requested a refill of his pain medication, but refused follow-up x-rays unless he was given pain medication.  *Id*.  Plaintiff was offered Ibuprofen and Toradol in the emergency department but declined, stating he wanted something stronger.  *Id*.  Plaintiff was advised he would not be given anything stronger, and he left the emergency department.  *Id*.  The emergency department provider noted that Plaintiff was exhibiting drug-seeking behavior.  *Id*.

assortment of injuries including broken ribs, a laceration on his head, an injured spine and ankle, and a re-injured pelvis. *See id*.

Plaintiff also alleges in his amended complaint that Defendants Baleto and Krafcik violated his Eighth Amendment rights when they failed to protect him, though these claims are less clear. *See* Dkt. 17 at 7-8, 10. Plaintiff asserts that Defendants threatened and taunted him while he was in the holding cell, and ignored the fact that Plaintiff's pelvis was broken before attacking him and causing serious injury. *See id*. Plaintiff also claims that Defendant Krafcik wrote a serious infraction report regarding the use of force incident in order to cover up the officers' misdeeds. *See id*. at 10.

Plaintiff alleges that Defendants Ricker and Ferebee violated his Eighth Amendment rights when they failed to protect him. *See* Dkt. 17 at 11-12. Plaintiff claims that Defendant Ricker took part in the assault by holding Plaintiff's legs while Defendant Baleto broke Plaintiff's ribs and split his head open. *Id*. at 11. Plaintiff further claims that Defendant Ricker exhibited deliberate indifference when he failed to intervene and protect Plaintiff from the assault. *Id*. Plaintiff similarly alleges that Defendant Ferebee stood and watched as the corrections officers assaulted him without making any move to help. *Id*. at 12.

Finally, Plaintiff alleges that Defendant Baleto violated his Eighth Amendment rights when he failed to let Plaintiff out for his shower on October 31, 2022, and failed to let him out for yard on November 2, 2022. Dkt. 17 at 14. Plaintiff claims that Defendant Baleto's inaction constitutes a failure to protect and deliberate indifference. *Id*.

Plaintiff requests in his amended complaint that he be awarded $1,901,000 in compensatory damages, and an additional $25,000 in punitive damages for each count alleged in his pleading. Dkt. 17 at 15.

### III. DISCUSSION

Defendants argue in their motion for summary judgment that Defendants Baleto and Krafcik are entitled to qualified immunity for their actions to restrain and control Plaintiff who was high on methamphetamine and MDMA at times relevant to this action. *See* Dkt. 39 at 7-14. Defendants further argue that Plaintiff's deliberate indifference claims against Defendants Ferebee and Ricker fail as a matter of law. *Id*. at 14-15. Finally, Defendants argue that Plaintiff's claim that Defendant Baleto violated his Eighth Amendment rights by not allowing him out for a shower one day or for his yard time another day fails as a matter of law. *Id*. at 15-16.

#### A. Applicable Legal Standards

##### 1. *Summary Judgment Standard*

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The

Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

  2.  Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute,

and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

### 3. Qualified Immunity Standard

Qualified immunity protects government officials from civil liability under § 1983 so long as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In order to determine if an officer is entitled to qualified immunity, a court must evaluate two independent prongs: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro v. County. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (citing *Pearson*, 555 U.S. at 232). Either prong may be considered first. *Pearson*, 555 U.S. at 236. As discussed below, this Court

concludes Plaintiff has not established that Defendants violated his constitutional rights. The Court therefore need not address the second prong of the qualified immunity analysis.

**B.    Analysis**

   *1.    Excessive Force*

The Eighth Amendment guarantees that individuals convicted of crimes will not be subject to cruel and unusual punishment. However, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670-71 (1977). To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. *Whitley v. Albers*, 475 U.S. 312 (1986).

When a prisoner alleges the excessive use of force under the Eighth Amendment, the "core judicial inquiry" is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Among the factors that may be appropriate to consider in determining whether the use of force in any particular instance was wanton and unnecessary are the presence or absence of serious injury, the need for application of force, the relationship between the need for force and the amount of force used, the threat "reasonably perceived by the responsible officials," and, "any efforts made to temper the severity of a forceful response." *See id*. at 7.

The evidence presented by Defendants in support of their summary judgment motion demonstrates that the force applied by Defendants on the morning of October 26, 2022, was applied for the purpose of bringing a resistant, unpredictable, aggressive prisoner under control. The evidence makes clear that Plaintiff was under the influence of a controlled substance on the

morning in question. He refused repeated directives to return to his cell following a recreational period while ranting about there being demons in his cell and his cellmate being possessed. When Defendants handcuffed him and escorted him to a holding cell, Plaintiff made efforts to pull away from them, but no force was used, and he was successfully placed in the cell without incident. Once in the holding cell, Plaintiff continued to rant incoherently, and he twice moved his wrist restraints from the back of his body to the front of his body.

After Plaintiff was assessed by mental health, and a UA test was suggested in light of Plaintiff's odd and disorganized behavior, he remained in the holding cell for a period of time because he would not consent to the UA. Only after Plaintiff agreed to provide a urine sample did Defendants remove him from the holding cell and attempt to escort him to another part of the unit to conduct the UA test. Despite his agreement to participate in the UA, during his escort to the bathroom, Plaintiff tensed up several times and began to physically resist. However, it was not until Plaintiff stopped walking and lunged aggressively towards Defendant Baleto that any force was applied. The force employed by Defendants involved putting pressure on both sides of Plaintiff's body and using the momentum from Plaintiff's lunge to propel him to the ground. Once on the ground, Defendants secured Plaintiff's upper and lower body and held him in place by putting pressure on Plaintiff's head and lower body until other officers arrived and assisted in securing Plaintiff in a restraint chair.

This evidence establishes that Defendants reasonably perceived Plaintiff posed a threat given his unpredictable behavior, that there was a need for application of force in the circumstances presented, and that the amount of force used was no more than necessary to bring Plaintiff under control. Plaintiff offers no evidence in conjunction with his response to the summary judgment motion to rebut these aspects of the evidence presented by Defendants. The

only question raised by the material in the record concerns the extent of the injuries suffered by Plaintiff as a result of the force applied during the incident. Defendants argue that Plaintiff cannot demonstrate he suffered any injuries resulting from the use of force incident aside from the small laceration above his left eyebrow. Dkt. 39 at 12-13. Defendants acknowledge Plaintiff reported after the incident that his ribs had been broken. *Id*. at 13. They assert, however, that when Plaintiff was seen by the medical staff in relation to the purported rib injuries, the medical provider's "written report" indicated there was no objective data to support Plaintiff's claim that "all" his ribs were broken. *Id*.

While Defendants' representation of the medical provider's report is accurate, it does not tell the full story. Plaintiff submitted in conjunction with his original complaint documents showing that the x-rays ordered by the medical provider revealed some of Plaintiff's ribs had been fractured. *See* Dkt. 6, Exs. G, H, I and J. This constitutes a significant injury. The Court observes, however, that this particular injury is perhaps not surprising in light of the fact that Plaintiff was handcuffed with his hands in front of him when he was taken to the ground by Defendants (*see* Dkt. 46, Ex. A), and therefore likely landed on his cuffed hands.

Even factoring in the injuries Plaintiff appears to have suffered during the use of force incident, there is simply no evidence that Defendants' actions were undertaken with the intent to cause Plaintiff harm. Plaintiff has not demonstrated that Defendants Baleto and Krafcik violated his Eighth Amendment rights in relation to the use of force incident, and they are therefore entitled to summary judgment with respect to Plaintiff's excessive force claims.

    2.    *Failure to Protect*

The Eighth Amendment imposes a duty upon prison officials to take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In order to

establish an Eighth Amendment violation in this context, a prisoner must satisfy a two-part test containing both an objective and a subjective component. The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind. *Id*. at 834.

The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

Defendants argue that Plaintiff's failure to protect claims fail for the same reason his Eighth Amendment excessive force claims fail. Defendants assert that in use of force cases, the applicable standard is that set forth above in relation to those claims specifically alleged by Plaintiff as excessive force claims and, thus, "the core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Dkt. 39 at 14 (citing *Hudson*, 503 U.S. at 6-7). Defendants further assert that even if the deliberate indifference standard does apply to Plaintiff's failure to protect claims, the legal standard is a high one and Plaintiff cannot meet it. *See id*. at 14-15.

As noted above, Plaintiff's failure to protect claims against Defendants Baleto and Krafcik are somewhat unclear. To the extent Plaintiff alleges that these Defendants taunted and threatened him, he has alleged no constitutional violation whatsoever. *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment and abuse is not sufficient to state a claim for relief under § 1983). To the extent Plaintiff alleges that Defendants failed to take note of his broken pelvis in considering his behaviors on the day of the incident, his claims merge with the excessive force claims discussed above and do not require independent analysis. Finally, to the extent Plaintiff alleges that Defendant Krafcik wrote a false infraction report to cover-up and justify Defendants' allegedly assaultive actions, Plaintiff fails to clearly explain how this claim implicates Eighth Amendment concerns.

With respect to Plaintiff's failure to protect claims against Defendants Ferebee and Ricker, assuming the deliberate indifference standard applies, Plaintiff fails to demonstrate that these Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety. As discussed at length above, Plaintiff has not demonstrated that Defendants Baleto or Krafcik acted improperly in attempting to regain control over him after he displayed concerning and unpredictable behavior over a period of time and then lunged at Defendant Baleto during the escort to the bathroom to collect a sample for UA testing. Because Plaintiff has not demonstrated that either Defendant Baleto or Defendant Krafcik applied force to him for the purpose of causing harm, he cannot demonstrate that Defendants Ferebee and Ricker were deliberately indifferent for failing to intervene in their fellow officers' efforts to restore order.[4]

---

[4] In his response to Defendants' summary judgment motion, Plaintiff requests that his claim against Defendant Ricker be dismissed without prejudice. *See* Dkt. 51. Because Plaintiff has not presented any evidence demonstrating that Defendant Ricker violated his constitutional rights, the Court deems a dismissal with prejudice more appropriate.

REPORT AND RECOMMENDATION
PAGE - 16

Finally, to the extent Plaintiff alleges that Defendant Baleto failed to protect him and/or demonstrated deliberate indifference toward him when Defendant Baleto did not allow him out for his shower on October 31, 2022, or for yard time on November 2, 2022, Plaintiff fails to state any claim upon which relief may be granted. The Court first observes that Defendant Baleto, in his declaration in support of Defendants' summary judgment motion, states that he was not the scheduled officer in charge of making the decisions that Plaintiff complains of. *See* Dkt. 40, ¶ 5. Even assuming Defendant Baleto was the officer in charge of such decisions, Plaintiff fails to demonstrate that these singular occurrences caused him any harm or exposed him to any substantial risk of serious harm.

For the foregoing reasons, this Court concludes that Defendants are entitled to summary judgment with respect to all failure to protect claims asserted by Plaintiff in his amended complaint.

### IV.     CONCLUSION

Based on the foregoing, this Court recommends that Defendants' motion for summary judgment (Dkt. 39) be granted, and that Plaintiff's amended complaint (Dkt. 17) and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 10, 2024**.

DATED this 17th day of April, 2024.

S. KATE VAUGHAN
United States Magistrate Judge